UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-MJ-01742-JG-1

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| v. | )  **JUDGMENT** |
| | ) |
| DEMETRIOS RIOS | ) |

This cause comes before the Court upon a bench trial conducted July 11, 2013 before the undersigned on a criminal information charging Defendant Demetrios Rios with violating N.C. Gen. Stat. § 20-138.1, driving while impaired ("DWI") and N.C. Gen. Stat. § 20-146(d)(1), failure to maintain lane, as assimilated by 18 U.S.C. § 13(a), the Assimilative Crimes Act ("ACA"). At the bench trial, the government dismissed count three of the criminal information, refusal to submit to testing of blood, breath or urine. For the reasons stated herein, the Court adjudges Rios GUILTY of (1) DWI and (2) failure to maintain lane based on the admissible evidence of record.

**I.  BACKGROUND**

This case arises from a single-vehicle traffic accident that occurred on the Fort Bragg Military Reservation. On the evening of June 13, 2012, Justin Stamper was driving his vehicle in the right-hand lane of Reilly Road, within the jurisdiction of Fort Bragg, behind a sports utility vehicle (SUV) driven by defendant Rios. Stamper noticed the SUV swerving in and out of the left-hand lane. As the road curved, Stamper witnessed the SUV continue straight, completely leave the roadway, and strike a utility pole.

Stamper stopped his vehicle and went to assist the driver of the SUV, defendant Rios. The SUV's airbags had deployed, the vehicle appeared inoperable, and there was a strong odor of gasoline. Rios refused Stamper's offers of assistance, however, and attempted instead to start his vehicle. After Stamper convinced Rios to exit the SUV, Stamper noticed Rios's speech was sluggish and he smelled of alcohol. Rios asked Stamper to help him move the SUV to the edge of the woods in order to conceal the vehicle, but Stamper refused and informed Rios he was calling the police. Rios told Stamper he was drunk and did not want to get in trouble.

Rios then went to the edge of the woods to relieve himself. When he returned, police officer Troy Looney of the Department of the Army Civilian Police was on scene. As he spoke with Rios, Officer Looney noticed an odor of alcohol emitting from him. Rios was unsteady on his feet, but declined offers of medical assistance. There was no apparent head trauma, injury to the face, bruising, or jerking of Rios's eyes when he looked straight forward to suggest a head injury. In addition, nothing in the vehicle indicated that Rios struck his head. Officer Looney observed what appeared to be dirt and urine on the front of Rios's shorts. Rios's speech was slurred and his eyes were bloodshot, red, and watery. Rios admitted drinking four 24-ounce beers at Hooters prior to the accident. Rios was unable to fully follow the instructions given by Officer Looney during three standard field sobriety tests. Officer Looney also administered a portable breath test to Rios on scene.

Thereafter, Officer Looney apprehended Rios, transported him to the Fort Bragg police station, advised him of the North Carolina implied consent provisions, and attempted to administer an intoxilyzer test. Rios refused to sign the implied consent form and refused to provide a breath sample. In preparation for placement in a holding cell, Officer Looney asked

Rios to place his watch and other personal items in a box. Rios stated that he had to remove his belt and attempted to remove his belt three times. Rios was not wearing a belt, however.

On September 12, 2012, the government issued a criminal information charging Rios with the instant offenses. At the bench trial on July 11, 2013, Justin Stamper and Officer Looney testified on behalf of the government. Rios presented no evidence. The trial was digitally recorded, and the undersigned has used an audio recording of the trial to prepare this judgment. The parties also submitted post-trial briefs.

II. **LEGAL BACKGROUND**

Under the ACA, conduct occurring on land under the special maritime and territorial jurisdiction of the United States that is not expressly prohibited by federal law is governed by the penal laws of the state where the land is located. United States v. Minger, 976 F.2d 185, 187 (4th Cir. 1992). "When a state law is assimilated under the ACA, the ACA transforms the state law into a federal law for purposes of prosecution, and any violation of the state law becomes a crime against the United States." Id. "The ACA assimilates the entire substantive criminal law of the state, including laws relating to the definition and scope of an offense and laws governing the manner in which an offense is to be punished." United States v. King, 824 F.2d 313, 315 (4th Cir. 1987). The federal courts therefore look to state law to determine the elements of the state crime assimilated. Id.; United States v. Price, 812 F.2d 174, 175 (4th Cir. 1987). However, the ACA does not adopt state procedural rules or rules of evidence. E.g., Price, 812 F.2d at 175; United States v. Card, No. 90-5313, 1991 U.S. App. LEXIS 1327, at *3 (4th Cir. Jan. 31, 1991) (unpublished); Kay v. United States, 255 F.2d 476, 479 (4th Cir. 1958).

Here, the defendant is charged with violating N.C. Gen. Stat. § 20-138.1 (DWI), and N.C. Gen. Stat. § 20-146(d)(1) (failure to maintain lane). N.C. Gen. Stat. § 20-138.1 provides in

relevant part that "[a] person commits the offense of impaired driving if he drives any vehicle upon any highway, any street, or any public vehicular area within this State . . . [w]hile under the influence of an impairing substance." N.C. Gen. Stat. § 20-138(a)(1). The applicable North Carolina law governing an operator maintaining his vehicle within the limits of his own lane, N.C. Gen. Stat. § 20-146(d)(1), states as follows: "A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." Violation of N.C. Gen. Stat. § 20-146 constitutes negligence per se. *See, e.g.*, Anderson v. Webb, 267 N.C. 745, 749, 148 S.E.2d 846, 849 (1966); McDevitt v. Stacy, 148 N.C. App. 448, 458, 559 S.E.2d 201, 209 (2002).

### III. ANALYSIS

#### A. The Government Proved Beyond A Reasonable Doubt That Defendant Violated N.C. Gen. Stat. § 20-138(a)(1)

To prove Rios guilty of DWI, the government must establish the following three elements beyond a reasonable doubt: (1) that defendant was driving a vehicle; (2) that he was driving that vehicle upon a street, highway, or public vehicular area on Fort Bragg Military Reservation, an area in North Carolina within the special maritime and territorial jurisdiction of the United States; and (3) that at the time defendant was driving the vehicle he was under the influence of an impairing substance. *See* N.C. Gen. Stat. § 20-138(a)(1); *see also* N.C.P.I.--Crim. 270.20; 18 U.S.C. § 13(a). Here, only the third element, that Rios was under the influence of an impairing substance, is disputed.

An impairing substance includes alcohol. N.C. Gen. Stat. § 20-4.01(14a). "A person is under the influence of an impairing substance when he has taken (or consumed) a sufficient

quantity of that impairing substance to cause him to lose the normal control of his bodily or mental faculties, or both, to such an extent that there is an appreciable impairment of either or both of these faculties." N.C.P.I.--Crim. 270.20; *see also* N.C. Gen. Stat. § 20-4.01(48b) (defining "under the influence of an impairing substance" as "[t]he state of a person having his physical or mental faculties, or both, appreciably impaired by an impairing substance").

Over objection, the Court permitted testimony concerning Rios's refusal to submit to the intoxilyzer test at the police station.[1] Both federal and North Carolina law provide for implied consent to testing for impairment while driving, revocation of the driving privilege for refusal to submit to testing, and admission of such refusal into evidence at trial on the impaired driving charge. *See* 18 U.S.C. § 3118; N.C. Gen. Stat. § 20-16.2(a). As noted *supra*, the federal rules of evidence govern this proceeding. Accordingly, the Court will deem evidence of Rios's refusal to submit to a breathalyzer to be governed by the relevant federal statute, 18 U.S.C. § 3118(b), rather than the corresponding North Carolina statute, N.C. Gen. Stat. § 20-16.2(a). The federal statute applies to all persons operating motor vehicles in the special maritime and territorial jurisdiction of the United States who are arrested for an impaired driving offense. The statute explicitly states that "refusal [to submit to a breath test] may be admitted into evidence in any case arising from such person's driving while under the influence of . . . alcohol." *Id.* § 3118(b). Military reservations, such as Fort Bragg, are within the special maritime and territorial jurisdiction of the United States, *see* 18 U.S.C. § 7(3) (defining "special maritime and territorial jurisdiction of the United States"), and Rios was arrested for an impaired driving offense. Therefore, the Court may consider Rios's refusal to submit to the intoxilyzer test as substantive

---

[1] Defendant also objected to Officer Looney's testimony regarding administration of the portable breath test administered at the scene of the accident. Although the undersigned allowed this evidence at the time, Defendant's objection is now sustained. Accordingly, no evidence regarding the portable breath test, other than the historical fact of its administration in the sequence of events, has been considered.

5

evidence that he was driving while impaired. This evidence, together with the other evidence as summarized below, establishes beyond a reasonable doubt that Rios drove while under the influence of alcohol, an impairing substance.

The government presented evidence that on the evening of June 13, 2012, Rios was swerving in his lane, lost control of the SUV he was driving, and struck a utility pole. Following the accident, Rios asked Justin Stamper to assist him in concealing the SUV. Rios stated that he was drunk and did not want to get in trouble. He smelled of alcohol, his speech was slurred, and his eyes were bloodshot, red, and watery. Rios was unsteady on his feet and could not follow all of the instructions given during the field sobriety tests administered by Officer Looney. Rios admitted to Officer Looney that he drank four 24-ounce beers before driving his vehicle. At the police station, Rios refused to submit a breath sample and attempted three times to remove a belt that he was not wearing at the time.

North Carolina courts have upheld impaired driving convictions under similar circumstances. *See, e.g.*, State v. Rhodes, No. COA12-1143, 2013 N.C. App. LEXIS 556, at *7-8 (N.C. Ct. App. June 4, 2013) (unpublished) (finding no error in the defendant's conviction of DWI where the defendant smelled of alcohol, admitted to drinking alcohol the night before, had bloodshot eyes and slurred speech, was unsteady on her feet, could not follow field sobriety test instructions, and refused to take an intoxilyzer test); State v. Gregory, 154 N.C. App. 718, 721, 572 S.E.2d 838, 840 (2002) (upholding DWI conviction where the defendant was speeding, abruptly changed lanes without signaling, slammed on his brakes, smelled of alcohol, staggered while walking, admitted to drinking alcohol prior to driving, had slurred speech, and refused to submit to a breathalyzer test).
6

At trial, Rios suggested that his behavior following the accident could have been the result of trauma to his head. However, Officer Looney testified that the airbags in the SUV had properly deployed and that there was no evidence in the vehicle to indicate that Rios struck his head. Rios had no visible signs of injury and declined repeated offers of medical assistance. Moreover, a head injury would not account for Rios's initial failure to maintain his vehicle in his lane or explain the strong smell of alcohol emitting from him. Nor is it likely that head trauma would cause Rios to request assistance in concealing his vehicle or to state that he was drunk and did not want to get in trouble. For all these reasons, the undersigned concludes that the government met its burden of proving beyond a reasonable doubt that Rios violated N.C. Gen. Stat. § 20-138.1.

### B. The Government Proved Beyond A Reasonable Doubt That Defendant Violated N.C. Gen. Stat. § 20-146(d)(1)

Rios argued at trial that in order to be found in violation of N.C. Gen. Stat.§ 20-146(d) (failure to maintain lane), the government was required to prove an element of willfulness—that is, that Rios purposefully and willfully failed to maintain the limits of his own lane while operating his automobile on a public roadway. However, in his post-trial supplemental brief, Rios concedes that the government "does not have to show that [his] driving was unlawful and willful." Def.'s Resp. 1, DE-14. Rios is correct. N.C. Gen. Stat. § 20-146(d)(1) does not contain an element of willfulness. *See* N.C. Gen. Stat. § 20-146(d)(1); Sobczak v. Vorholt, 181 N.C. App. 629, 637, 640 S.E.2d 805, 811 (2007) ("It is irrelevant that Defendant did not *intentionally* drive his car from his lane of travel across the center line."). Instead, violation of N.C. Gen. Stat. 20-146(d)(1) constitutes negligence per se. *See, e.g.*, Anderson v. Webb, 267 N.C. 745, 749, 148 S.E.2d 846, 849 (1966); McDevitt v. Stacy, 148 N.C. App. 448, 458, 559

7

Case 5:12-mj-01742-JG   Document 16   Filed 07/17/13   Page 7 of 11

S.E.2d 201, 209 (2002). A defendant may rebut the presumption of negligence created by a violation of section 20-146(d) by presenting evidence that he was on the wrong side of the road from a cause other than his own negligence. *See* Sobczak, 181 N.C. App. at 637, 640 S.E.2d at 811. Here, Rios presented nothing to rebut the government's overwhelming evidence that he failed to maintain his lane when he drove his SUV off Reilly Road on Fort Bragg and struck a utility pole. The undersigned therefore concludes that the government has established beyond a reasonable doubt that Rios violated N.C. Gen. Stat. § 20-146(d)(1).

## IV. FINDINGS OF FACT

Based upon the admissible evidence of record, the undersigned makes the following findings of fact:

1. On June 13, 2012, Defendant Rios was driving a vehicle on Reilly Road, a street, highway, or public vehicular area on board Fort Bragg Military Reservation in the Fayetteville area of North Carolina.
2. Fort Bragg Military Reservation is within the Eastern District of North Carolina.
3. Defendant was swerving his vehicle outside his lane, crossing the center line.
4. Justin Stamper was driving behind Defendant and witnessed Defendant's vehicle swerving outside its lane.
5. Justin Stamper witnessed Defendant's vehicle leave the road and strike a utility pole.
6. Defendant attempted to start his vehicle and leave the scene of the accident, despite the vehicle's inoperability.
7. When Defendant exited the vehicle, an odor of alcohol emanated from Defendant's person.

8. Defendant asked Justin Stamper to assist him in concealing his vehicle at the edge of the woods.

9. Defendant told Justin Stamper that he was drunk and did not want to get in trouble.

10. Defendant's speech was slurred.

11. Officer Troy Looney of the Department of the Army Civilian Police arrived on scene shortly following the accident.

12. Officer Looney noticed an odor of alcohol emitting from Defendant.

13. Defendant was unsteady on his feet.

14. Defendant did not appear to be physically injured and declined offers of medical assistance.

15. Defendant had no apparent head trauma, injury to the face, bruising, or jerking of his eyes when he looked straight forward.

16. Nothing in Defendant's vehicle indicated that he struck his head.

17. The airbags in Defendant's vehicle were properly deployed.

18. Officer Looney observed what appeared to be dirt and urine on the front of Defendant's shorts.

19. Defendant's speech was slurred.

20. Defendant's eyes were bloodshot, red, and watery.

21. Defendant told Officer Looney that he drank four 24-ounce beers prior to the accident.

22. Defendant could not fully follow the instructions given by Officer Looney during three standard field sobriety tests.

23. Following administration of a portable breath test, Officer Looney apprehended Defendant and transported him to the Fort Bragg police station.

24. Officer Looney advised Defendant of the North Carolina implied consent provisions, and attempted to administer an intoxilyzer test.

25. Defendant refused to sign the implied consent form and refused to provide a breath sample.

26. Before being placed in a holding cell, Defendant attempted to remove his belt three times.

27. Defendant was not wearing a belt at the time he attempted to remove his belt.

## V.  **CONCLUSIONS OF LAW**

Based on the foregoing findings of fact, the undersigned makes the following conclusions of law:

1. Defendant was driving the vehicle on a street, highway, or public vehicular area, as defined by N.C. Gen. Stat. § 20-4.01(13), (32), (46), in an area in North Carolina within the special maritime and territorial jurisdiction of the United States, as defined by 18 U.S.C. § 7(3), namely, Fort Bragg Military Reservation.

2. Defendant was driving the vehicle under the influence of an impairing substance, as defined by N.C. Gen. Stat. § 20-4.01(48b), namely, alcohol.

3. Defendant is guilty of the offense of impaired driving as charged, in violation of N.C. Gen. Stat. § 20-138.1, as assimilated by 18 U.S.C. § 13(a).

4. Defendant failed to maintain his lane while driving his vehicle on a street.

5. Defendant is guilty of the offense of failure to maintain lane as charged, in violation of N.C. Gen. Stat. § 20-146(d)(1), as assimilated by 18 U.S.C. § 13(a).

## VI. **SENTENCING**

The Court shall schedule by separate notice the date, time, and place of the sentencing hearing for Defendant on his convictions for violation of both N.C. Gen. Stat. § 20-138.1 and N.C. Gen. Stat. § 20-146(d)(1), as assimilated by 18 U.S.C. § 13(a).

DONE AND ORDERED in Chambers at Raleigh, North Carolina on Wednesday, July 17, 2013.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE